## *CHICAGO, R. I. & P. R. CO. v. OWENS, Admx.

No. 8889—Opinion Filed Jan. 20, 1920.

(Syllabus by the Court.)

**1. Master and Servant—Action for Death of Brakeman—Evidence—Res Gestae.**

The question of admissibility of statements as part of the res gestae should in a great measure be left to the determination of the trial court. Held, under the facts in the above-entitled case, the evidence was admissible.

**2. Same—Evidence of Poverty of Plaintiff—Harmless Error.**

The court permitted plaintiff to testify that she was working in a restaurant at $7 per week and that her children were in an orphanage. There is no complaint made that the verdict is excessive. Held, although error from an examination of the record the rights of the defendant were not prejudiced thereby.

**3. Same—Elements of Damages—Employers' Liability Act.**

Under the federal Employers' Liability Act, the principal representative of the deceased employe on the part of a designated beneficiary, in a proper case, may recover such damages as will compensate them for their pecuniary loss, and also such damages as will be reasonably compensatory for the conscious pain and suffering of deceased between the time of the injury and his death.

**4. Same—Recovery for Suffering of Deceased—Petition—Sufficiency.**

The petition in the above-entitled case failed to allege that the deceased ever recovered consciousness after receiving the injury, and failed to state how long he survived after receiving said injury, and failed to state that the deceased suffered intense pain; therefore did not state sufficient allegations to predicate a cause of action to recover for conscious pain and suffering between the time of the injury and the time of the death of the deceased.

---

*Appealed to the Supreme Court of the United States.

**5. Same—Insufficiency of Petition—Method of Attack.**

Allegations in a petition of the representatives of a railroad employe to recover for death of the employe caused by the railway company's negligence, that the company was incorporated in Iowa and Illinois and operated its railway in and through the state of Oklahoma, and that, when injured, deceased was in the line of his duty, and that the injury occurred in Oklahoma, by reason of the negligence of the defendant in operating its train, imperfectly stated a cause of action under the federal Employers' Liability Act, and if the company was in doubt as to whether the action was brought under the state or federal statute, they should have filed a motion to make the petition more definite and certain, or to require the plaintiff to elect.

**6. Same—Departure in Reply—Waiver of Defect.**

When the allegations of the reply constituted a departure, the same could not be taken advantage of by objecting to the introduction of any evidence under the pleadings, and that defendant waived the defect by failing to move to strike the reply and going to trial on the issues thus raised.

**7. Trial — Instructions — Sufficiency as a Whole.**

All of the instructions should be considered together, and if, when considered as a whole, they state the law correctly and without conflict, it is sufficient, although one or more, standing alone, might be incomplete.

**8. Master and Servant—Damages for Death of Brakeman—Sufficiency of Evidence.**

The evidence examined, and held, that it was not error for the court to overrule the motion of the defendant to instruct the jury to return a verdict for defendant, and there was sufficient evidence to support the verdict of the jury.

**9. Appeal and Error—Modification of Judgment—Damages for Death of Brakeman.**

Where a verdict in a damage suit for the death of an employe of a railroad company under the federal Employers' Liability Act itemizes the damages at $10,000 for pecuniary loss and $5,000 for conscious pain and suffering, and the petition fails to state sufficient allegations to state a cause of action for conscious pain and suffering, but the item for pecuniary loss is proper, the court being able to separate the legal from the illegal amount of the verdict, the judgment will be modified and affirmed for the amount of the verdict that was proper.

Error from District Court, Seminole County; Tom D. McKeown, Judge.

Action by Mrs. Minnie Owens, administratrix, for the death of her husband, E. E. Owens, against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

W. H. Moore, C. O. Blake, R. J. Roberts, J. E. DuMars, and John W. Wilmott, for plaintiff in error.

W. N. Maben and Stuart, Cruce & Cruce, for defendant in error.

McNEILL, J. This action was instituted in the district court of Seminole county by Mrs. Minnie Owens, administratrix of the estate of E. E. Owens, against the Chicago, Rock Island & Pacific Railway Company, a corporation, to recover damages for the death of her husband, E. E. Owens, alleged to have been killed in an accident while on duty in the employ of the defendant as a brakeman on its line of railway on the 24th day of October, 1913.

The material allegations of the petition are that E. E. Owens was survived by the plaintiff, his widow, and their three children; that she was the duly appointed administratrix of said estate; that the defendant was a corporation organized under the laws of Iowa and Illinois, and operated its railroad into and through the state of Oklahoma. That on the 24th day of October, 1913, the deceased was a brakeman and extra conductor on said railroad, and was called and did go out on a run to take the place of an absent brakeman on train No. 97, which train proceeded on its line of railroad from the city of Shawnee, in a westerly direction, to what is known as "Choctaw Hill", where there is a steep grade some two or three miles west of the town of Choctaw; that the train was heavily loaded, the exact tonnage not being known to said plaintiff; that there was not sufficient sand in said engine to prevent the engine from slipping, and the company was negligent in failing to supply said engine with sufficient sand, and when said engine attempted to go up said hill the engine could not pull the train and allowed the engine to slip and the cars to go back against each other with great force and violence. That when the deceased finished his supper in the caboose, and while the train was moving up Choctaw Hill, deceased took his lantern and went on the platform of the caboose and attempted to mount a box car in front of the caboose, and while attempting to pass from the caboose to the box car, on account of the defendant failing to supply the engine with sufficient sand and on account of the negligence of the engineer in allowing said engine to stop and slip back, all of which caused the cars to come together with great force and violence, and more than the ordinary force and violence of the cars coming together when an engine has sufficient sand,

and on account of the cars jarring together with extraordinary force and violence, the deceased was knocked from the platform of the caboose and over the side of the trestle to the ground below, a distance of about 40 feet, inflicting upon the deceased severe mortal wounds, from which he died soon thereafter—and plaintiff prays for damages.

It was further alleged that the company knew of the condition surrounding the running of the train; that deceased had no knowledge of the negligence of the defendants, and that said negligence was the proximate cause of the accident and injury. For which plaintiff prays for damages for the wrongful death of deceased in the sum of $30,000.

During the trial the plaintiff, over the objection of the defendant, amended her petition, which amendment disclosed that the case was prosecuted under the federal Employers' Liability Act, and attempted to state a cause of action to recover for suffering and conscious pain of the deceased. The defendant filed an amended answer, setting up numerous defenses, to wit, that of contributory negligence, assumption of risk, that defendant was engaged in interstate commerce, and its liability was controlled by the federal Employers' Liability Act. The plaintiff replied by general denial.

From a judgment in favor of the plaintiff in the sum of $10,000 for pecuniary loss, and $5,000 for conscious pain and suffering, the defendant has appealed, and for reversal of said judgment relies upon numerous specifications of error.

The first specification of error relied upon is that the court erred in admitting certain testimony over the objection of the defendant. This assignment of error is first directed to the evidence of Dr. C. W. Townsend, who was the physician summoned to minister to the deceased, and who saw the deceased about an hour after the injury occurred. The physician testified that the deceased was in a semiconscious condition and in great pain; that he aroused deceased from that condition and inquired as to how he fell, and the deceased remarked, "The train jerked and I lost my grip"; that during the time he ministered to deceased thereafter, deceased would arouse from a semiconscious condition and answer some question fairly intelligently. It is the contention of the defendant that this statement was not a part of the res gestae and not properly admitted. The evidence upon whether this statement was deceased's first utterance after regaining consciousness was conflicting; the evidence of the doctor and the brakeman supporting

the theory that the deceased was unconscious and this was his first statement, while the testimony of the conductor of the train contradicted that of the brakeman. The conductor testified that on two occasions prior to the time the doctor interviewed the deceased, the deceased was apparently conscious. It thus became the duty of the court to pass upon this conflicting evidence and say whether or not the statement above referred to was the first statement of the injured person after returning to consciousness.

The rule of this court upon that question is stated in the case of St. Louis & S. F. R. Co. v. Fick, 47 Okla. 530, 149 Pac. 1126, wherein Justice Kane, in delivering the opinion, stated as follows:

"A great many authorities are cited by counsel for both plaintiff and defendant purporting to sustain their respective contentions in regard to the admissibility of the porter's statement. However, as every case must be treated upon its own circumstances, we do not find the iteration and reiteration of the well-known rule and its application to many varying and dissimilar sets of facts to be particularly helpful. This court seems to be committed to the doctrine that the admissibility of this class of testimony ought to be left, in a great measure, to the discretion of the trial court. Smith v. C., R. I. & P. R. Co., 42 Okla. 577, 142 Pac. 398. And Mr. Wigmore in his work on Evidence (section 1750) is of the opinion that the courts 'should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the determination of the trial court.'"

This same rule has been followed in the case of Herring v. Hood, 55 Okla. 737, 155 Pac. 253; Chicago, R. I. & P. R. Co. v. Jackson, 63 Oklahoma, 162 Pac. 823. The admissibility of said evidence being largely for the determination of the trial court, unless this court can say the trial court's ruling upon that question is erroneous, the same should not be disturbed. The evidence as to whether deceased was conscious is conflicting, and, from an examination of all of the evidence upon this point, we do not think the trial court committed error in permitting the introduction of said evidence.

The plaintiff in error next contends that the court erred in admitting certain testimony of the plaintiff over the objection of the plaintiff in error, being the following testimony:

"Q. Where do you work? (No objection was made to this question and answered as follows:) A. I work at 114 West Main, Kunderer's restaurant. Q. You work for wages, (Objected to, as incompetent, irrelevant, and

immaterial.) A. Yes; I work for wages and make $7 a week. Q. Where do you keep your children? (Objected to, as incompetent, irrelevant, and immaterial.) A. I keep my children at St. Joseph's Orphanage, between Oklahoma City and El Reno."

The evidence as to where the plaintiff worked was not objected to. The answer disclosing what wages she received was not in response to any question, and no request was made to withdraw the same from the consideration of the jury. No error can be predicated upon the question which was not objected to, nor to the part of the answer which was not responsive to the question, as no request was made to strike that portion of the answer, or to take it from the consideration of the jury. This would leave the questions, "You work for wages?" which was answered in the affirmative, and "Where do you keep your children?" and the answer thereto, upon which error was predicated. These questions and answers were no doubt inadmissible. This court in a very similar case, to wit, Choctaw Cotton Oil Co. v. Pope, 47 Okla. 383, 148 Pac. 170, stated as follows:

"The court permitted plaintiff to testify that he had a wife and three children. The verdict was less than the average for an injury similar to the one received by plaintiff. No complaint is made that the verdict is excessive. Held, if error, it was not prejudicial."

Under our statutes and the decisions of our court, it is not all errors that will cause the reversal of the case. This court in a long line of decisions is committed to the following rule:

"If, after an examination of the entire record, this court is unable to say that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right, the judgment must be affirmed." Oklahoma City Land & Development Co. v. Adams Engineering & Blueprinting Co., 51 Okla. 763, 155 Pac. 496; St. Louis & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436; Bartlesville Zinc Co. v. James, 66 Oklahoma, 166 Pac. 1054.

There is no contention made that the verdict for the wrongful death is excessive, and, if not excessive, the introduction of this evidence must be held as harmless error. The plaintiff in error does not suggest in what way it has been prejudiced by the introduction of this evidence. There being no claim that the verdict is excessive, from the examination of the entire record we are unable to say that the plaintiff in error was prejudiced by the introduction of said evidence.

The next assignment of error is that the evidence of Chas. L. Masek, who testified by deposition, was hearsay, and should be disregarded, and for the further reason that his testimony was a complete fabrication. The only contention made that the evidence was hearsay is that the witness testified as follows:

"You can state in order to connect the transaction, if you heard at the time of any person being hurt in that accident? A. Yes; I heard that some person by the name of Eddy or Ernie Owens got hurt."

The witness testified he was on a freight train of the Rock Island Railway Company close to the town of Choctaw, some time during the latter part of October, 1913, and detailed the train going up a hill and stopping, telling ot an extraordinary jar of the train, before or about when stopping, sufficient to throw him from the rods, and of how he got up and looked around, he saw it was close to a bridge or trestle, and he saw the train men go down below the trestle. It is suggested that this is hearsay and makes the entire evidence incompetent. We do not think there is any merit in this contention. While the fact that witness understood Eddy or Ernie Owens was injured was incompetent to prove the injury, yet it was a fact and circumstances, under all of the facts in the case, to be taken into consideration by the jury in determining whether it was upon this night that the witness Masek was riding upon the cars. It is not within the province of this court to weigh the evidence and to say whether they would believe the witness Masek or not, as the determination of that question is for the jury, and not for the court.

The next assignment of error is that the court erred in permitting the petition to be amended, asking for damages for conscious pain and suffering of deceased.

During the trial of the case, and at the close of plaintiff's testimony, the plaintiff asked permission to amend the petition, which was granted over the objection of the defendant for the reason that it was not a proper amendment and attempted to state a new cause of action, and for the further reason it did not state a cause of action under the federal Employers' Liability Act.

The Supreme Court of the United States, in the case of St. Louis, Iron Mountain & Southern Railway Company v. Craft, 237 U. S. 648, 59 L Ed. 1160, held that under the provisions of the federal statute, as amended in 1910, recovery was permitted by the representative of the deceased employe on the part of the designated beneficiary for such damages as would be reasonably compensatory to them for the pecuniary loss, and also

compensation for conscious pain and suffering of deceased between the time of injury and his death. In the case of Washington Electrical R. Co. v. Scala, 244 U. S. 630, 61 L. Ed. 1660, the Supreme Court of United States, in passing on the question where an amendment had been permitted similar to the one in the case at bar, stated, however, the petition before the amendment alleged that the injury received caused the deceased to suffer intense pain, and held that the amendment did not introduce a new cause of action, but only alleged the same facts as were alleged in the original petition, but in a different way, and it was not error to permit the amendment. An examination of the petition in the case at bar discloses the petition in the first instance failed to allege that the deceased ever suffered any pain, or that he ever regained consciousness after receiving the injury. The amendment to the petition failed to allege that the deceased ever regained consciousness or that he was conscious and suffered any pain. While the amendment would have been proper had the original petition contained the allegation that the deceased suffered conscious pain. We think that the amendment was proper to disclose that the case was being tried under the federal Employers' Liability Act, but in so far as it attempts to state a cause of action for conscious pain and suffering the petition before amendment did not state any such cause of action, nor did the same after the amendment.

We therefore hold from the state of the pleadings that there was no issue raised to sustain a cause of action for conscious pain and suffering, and it was error to submit this question to the jury; but the jury having found the amount of damages for this cause of action separate from the other item of damages, it does not require the reversal of the case but that portion of the damages must be disregarded.

The next assignment of error is that there is a variance between the pleadings and the proof. The case was tried and submitted under the law applicable to the federal Employers' Liability Act, and the evidence disclosed that the train and the deceased at the time of the injury were engaged in interstate commerce.

The United States Supreme Court, in the case of Seaboard Airline Railway Co. v. Renn, 241 U. S. 290, 60 L. Ed. 1006, stated the rule as follows:

"The original complaint set forth that the defendant was operating a line of railroad in Virginia, North Carolina, and elsewhere; that the plaintiff was in its employ; that when he was injured he was in the line of duty and was proceeding to get aboard one of the defendant's trains, and that the injury was sustained at Cochran, Virginia, through the defendant's negligence in permitting a part of its right of way at that place to get and remain in a dangerous condition. Of course, the right of action could not arise under the laws of North Carolina when the causal negligence and the injury occurred in Virginia : and the absence of any mention of the laws of the latter state was at least consistent with their inapplicability. Besides, the allegation that the defendant was operating a railroad in states other than Virginia was superfluous if the right of action arose under the laws of that state, and was pertinent only if it arose in interstate commerce, and therefore under the act of Congress. In these circumstances, while the question is not free from difficulty, we cannot say that the court erred in treating the original complaint as pointing, although only imperfectly, to a cause of action under the law of Congress. And this being so, it must be taken that the amendment merely expanded or amplified what was alleged in support of that cause of action, and related back to the commencement of the suit, which was before the limitation had expired."

By applying the same rule to the petition in the instant case, it stated, although imperfectly, a cause of action under the federal Employers' Liability Act. The amendment at the trial made this fact more apparent—that plaintiff was proceeding under this act. The original petition having stated a cause of action under the federal Employers' Liability Act, the fact that the same was amended after two years was not error, because the amendment merely expanded or amplified the allegations of the original petition and related back to the commencement of the suit. The petition having stated a cause of action under the federal Employers' Liability Act, the proof supports that theory. The answer having alleged that the deceased was engaged in interstate commerce and that the liability of the defendant should be measured by the law applicable to the federal Employers' Liability Act, and the court having tried the case upon this theory we do not think there was any variance in the pleadings or proof, although the reply was a general denial.

In the case of Wabash Railroad Co. v. Hayes, 234 U. S. 86, 58 L. Ed. 1226, the rule is stated as follows:

"Where the state court treats a mistaken allegation that the injury occurred in interstate commerce as eliminated, it merely gives effect to a rule of local practice and does not deprive defendant of any federal right. Quaere, as to what the effect would be if the shift from a claim under the federal act to one under the state law cut the defendant off from presenting a defense open under the latter or deprived him of a right of removal."

The defendant could not complain, for the reason it stated the case was controlled by the federal Employers' Liability Act, and the court tried the case upon that theory, so any rights that it had by reason of that law were protected.

It is contended, however, that the reply being a general denial, it is therefore conclusive that the plaintiff was proceeding under the state statute; but in this we cannot agree. The rule announced in 31 Cyc. 246, is as follows:

"Accordingly it is generally held that if a reply is filed in a case where no reply is required, it is to be treated as a nullity; and may be stricken out on motion."

Regarding the contention that the general denial constitutes a departure from the petition: if so, the remedy of plaintiff in error was not by objection to the introduction of evidence or by a motion to instruct a verdict, but the procedure to take advantage of this defect is stated by this court in the case of St. Paul Fire & Marine Ins. Co. v. Mt. Park Stock Farm Co., 23 Okla. 79, 99 Pac. 647, as follows:

"Held, that the allegations of the reply constituted a departure, that the same could not be taken advantage of by objecting to the introduction of any evidence under the pleadings, and that defendant waived the defect by failing to move to strike the reply and going to trial on the issues thus raised."

See, also, Purcell v. Corder, 33 Okla. 68, 124 Pac. 457; Landon v. Morehead, 34 Okla. 701, 126 Pac. 1027.

The Supreme Court of Kansas, in passing upon a case very similar in point, the case of Hunter Milling Co. v. Allen, 88 Pac. 252, 8 L. R. A. (N. S.) 291, stated as follows:

"The verdict, special findings, and judgment are based strictly upon the petition and not upon the reply as a cause of action. Therefore the defendant has been obliged to meet no departure. He has been defeated upon nothing but the very issue which he insists was the proper one to try. His substantial rights have not been prejudiced."

This court in the case of Dunn v. Modern Foundry & Machine Co., 51 Okla. 465, 151 Pac. 898. stated as follows:

"Under the statute (section 6005, Rev. Laws 1910), this court is required to disregard any error in the pleadings or proceedings which does not affect the substantial rights of the party appealing."

For the reasons stated, we do not think this assignment of error is well taken.

The next assignment of error is that the court erred in overruling the motion to instruct a verdict for the defendant, and that there is no evidence to support the verdict.

The case in its final analysis, when submitted to the jury, in so far as the negligence of the defendant was an issue, was whether there was an extraordinary and unusual jarring and jerking of the train, which threw deceased from the train, and whether the extraordinary and unusual jarring and jerking of the train was caused by the engine not being furnished with sufficient sand, or, if sand was furnished, whether the engineer in the operation of said train failed to use the sand while pulling up said hill, and by reason thereof the train was suddenly and negligently jerked, thereby throwing deceased from the train.

An analysis of the evidence discloses the following facts: The engine pulling the train was what was known or called a "2100" engine, and the train on this night had a tonnage of 1,400 tons. The engine, if working properly and supplied with sand, or if sand was used, could pull this tonnage over the hill without difficulty. It was testified by most of the witnesses that the engine slipped several times, and when the engine slipped it jarred the rear end of the train. The engineer testified, if the train was standing still and he applied all the steam and used the sand, he could commit a lot of mischief, perhaps jerk the train in two. He further testified that on this occasion he used all the power he had to get the train over the hill without cutting the train in two on that night.

Upon the question of the train jarring at the time the deceased received his injury, there was the evidence of the doctor as to what deceased said, and there was the additional evidence of the witness Masek, who testified as follows:

"Q. Mr. Masek, you can state to the best of your recollection the nature of that jerk or jolt, whether it was hard? A. Well, it was unusually hard. I had ridden on freight trains a number of times before, and that was what I would call an unusually hard jolt. Q. Now, the position you had under the train on those rods, was it such as you could hold your position without falling in case of an ordinary jolt? A. Yes; those rods are about two-inch rods and they make good handholds and footholds, too. Q. You can state what sort of a jolt or jerk it would take to jar you loose? A. It would take an extraordinary jolt, something unusual. Q. You can state whether you are a physically strong man, or otherwise, A. Well, I am considered to be a strong man."

In addition to this, the witness also testified that the train was creeping up the grade when the jar occurred, and it threw him off

under the car, and he rolled out, and as he got up the train stopped, and he thought there had been a collision. The conductor testified that as the deceased left the caboose the door slammed, and he heard the deceased's lantern globe break and the train stopped at that time.

As to whether the court erred in overruling the motion of plaintiff in error to instruct a verdict, this evidence should be measured by the rule as laid down by the Supreme Court of the United States in the case of Seaboard Airline R. v. Renn, supra, where the court stated as follows:

"Error is assigned upon a refusal to instruct the jury, as a matter of law, that there was no evidence of actionable negligence on the part of the defendant, and that the evidence conclusively established an assumption by the plaintiff of the risk resulting in his injury. Both courts, trial and appellate, held against the defendant upon these points. They involve an appreciation of all the evidence and the inferences which admissibly might be drawn therefrom; and it suffices to say that we find no such clear or certain error as would justify disturbing the concurring conclusions of the two courts upon these questions."

This court, in the case of Blair v. Lewis, 57 Okla. 707, 157 Pac. 905, stated as follows:

"Where the evidence presents an issue of fact, whether clear or obscure, it is the duty of the court to submit such issue to the jury for its determination."

This court, in the case of Penn Mutual Life Ins. Co. v. Spaulding, 50 Okla. 307, 150 Pac. 494, stated:

"Where the minds of reasonable men may differ as to the legal sufficiency of the evidence, the jury, and not the court, must determine the issues."

In regard to whether the evidence was sufficient to prove the jerk or jar of the train was unusual and extraordinary, this court, in the case of M., K. & T. R. Co. v. Taylor, 69 Oklahoma, 170 Pac. 1148, stated as follows:

"Jurors are presumed to know what every one else knows. In arriving at a verdict they are not confined to the mere letter of the evidence, but, in applying the testimony, and the reasonable inferences and deductions therefrom, and determining the credibility of witnesses, may properly call to their aid matters of common experience, observation, and general knowledge. If the usual and recognized results of the stopping of a freight train were such as attended the stop in question, it is quite probable that our people would employ less hazardous means of transportation than railways. Although no witness testified thereto in so many words, in the light of common observation and knowl-edge the jury was warranted in finding from the established physical facts that the jerks and jar occasioned by the sudden stopping of the train in the instant case were unusually and extraordinarily violent."

To the same effect are the cases of St. Louis & S. F. R. Co. v. Fitts, 40 Okla. 685, 140 Pac. 144; Ramsey v. McKay, 44 Okla. 774, 146 Pac. 210; Chicago, R. I. & P. R. Co. v. Grace, 61 Oklahoma, 159 Pac. 1011. By applying the law above cited to the evidence, we think there was sufficient evidence to submit the case to the jury upon the questions: Was there an extraordinary and unusual jarring of the train that caused the deceased to be thrown from the train? And, second, was the extraordinary jarring and jerking of the train caused by reason of sufficient sand not being furnished, or, if furnished, by the negligence of the engineer in not using the same? We think there was sufficient evidence to submit the case to the jury on these questions. The jury having found these issues in favor of the plaintiff, we think there was sufficient evidence to support the verdict.

The next assignment of error is that the court erred in giving certain instructions, and that the court in giving the instruction seeking to cover the whole case did not include in it the assumption of risk and contributory negligence, while the court did give instructions on assumption of risk and contributory negligence. Those instructions were in separate instructions. This question has been settled by this court in the case of Newton v. Allen, 67 Oklahoma, 168 Pac. 1009, where the court stated as follows:

"All instructions should be considered together. If, when considered as a whole, they state the law correctly and without conflict, it is sufficient even though one or more standing alone might be incomplete."

Defendant objects to certain other instructions given by the court; but, after a careful reading of all the instructions, we are of the opinion that they correctly state the law applicable to the pleadings and evidence in the case and no error appears therefrom prejudicial to the rights of plaintiff in error.

For the reasons stated, the finding of the jury for pecuniary loss in the sum of $10,000 will be affirmed, and the judgment for $5,000 for conscious pain and suffering will be disallowed, for the reason neither the petition nor the amendment stated a cause of action for conscious pain and suffering.

For the reasons stated, the judgment will be modified and affirmed in the sum of $10,-000.

OWEN, C. J., and RAINEY, KANE, and JOHNSON, JJ., concur. PITCHFORD, HIGGINS, and BAILEY, JJ., dissent.